# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ERENDIDA TOSADO, CARLOS TOSADO, and JANELLE TOSADO, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) 14 CV 3139 ) ) Judge LEE |
| The CITY OF CHICAGO and Chicago Police Officers B. CHINCHILA #9445, ECHOLS #12379, ANDAVERDE #2530, and other UNKNOWN OFFICERS, | ) ) Magistrate Judge MARTIN ) ) ) |
| Defendants. | ) |

## PLAINTIFFS' PETITION FOR ATTORNEYS' FEES

Plaintiffs, ERENDIDA TOSADO, CARLOS TOSADO, and JANELLE TOSADO by and through their attorneys, The HAMILTON LAW OFFICE, LLC respectfully petition this court for attorneys' fees and non-taxable costs pursuant to 42 U.S.C. §1988 in the amount of $15,093.50.[1] In support of this petition, Plaintiffs state as follows:

## INTRODUCTION

Plaintiff Erendida Tosado is 60 years old, and lives with her adult children, Plaintiffs Carlos and Janelle Tosado. The Tosados live in Chicago in a home they have owned and occupied for 30 years. None of the Plaintiffs have any criminal background. On November 21, 2013, Defendant Chinchilla obtained a "John Doe" search warrant for the Plaintiffs' home based on supposed confidential informant's tip that he had bought $60 worth of marijuana from a person named "Tommy" living at the Tosado address (no one named "Tommy" has ever lived with the Tosados). Based on this alleged tip, Defendant Officers planned and executed a terrifying invasion into the Tosado family home. Over a supposed $60 marijuana sale, these officers dressed all in black and

---

[1] This petition seeks attorneys' fees for the time spent litigating the underlying case up until Plaintiffs'

wore facemasks (which they never removed the entire time they were in the Tosado home). They used a battery ram to knock down the Tosados' two front doors without even giving them time to open them first. They actually pinned Janelle Tosado under the inner door since she had been in the process of opening it for them when they knocked it down. They pointed their guns at the Tosados, broke glass in their china cabinet, swore at and interrogated this family, ransacked their home, and even kicked their dog (a 10 year old Dachshund). No one was arrested.

On August 8, 2014, Plaintiffs accepted Defendants' Federal Rule of Civil Procedure 68 offer of judgment in the amount of $30,003.00 plus reasonable attorneys' fees and costs to be determined by the Court. *See* Dkt. No. 23. This Court entered judgment in favor of Plaintiffs on August 20, 2014. *See* Dkt. No. 25. As the prevailing parties in this case, Plaintiffs now seek an award of attorneys' fees pursuant to §1988.

## ARGUMENT

The Civil Rights Attorneys' Fees Act of 1976 (42 U.S.C. §1988) provides in relevant part: "In any action or proceeding to enforce a provision of Section…1983…of this title…the court, in its discretion, may allow the prevailing party…a reasonable attorneys' fee as part of the costs." The law asks this Court to determine two issues: 1) whether Plaintiff is a prevailing party for purposes of §1988; and 2) whether the attorneys' fees requested are reasonable. Plaintiffs maintain that the facts in this case dictate that both of these issues should be decided in their favor.

## I. PLAINTIFFS ARE THE PREVAILING PARTIES.

Plaintiffs are undoubtedly the prevailing parties in this matter pursuant to §1988. As an initial matter, the language of Defendants' Rule 68 offer of judgment specifically allows for reasonable attorneys' fees in addition to the underlying judgment amount for Plaintiffs. Defendants therefore concede Plaintiffs' prevailing party status and should be estopped from making any argument that Plaintiffs are *not* the prevailing parties in litigating this fee petition. As a result of their success, albeit

without proceeding to trial, Plaintiffs are undoubtedly prevailing parties for §1988 purposes and are, therefore, entitled to reasonable attorneys' fees.

## II. PLAINTIFFS' ATTORNEYS' FEES ARE REASONABLE.

As the prevailing parties in this matter, Plaintiffs are entitled to compensation for the reasonable fees and costs accrued by their attorneys in pursuing their case. The starting point for any fee calculation is the lodestar figure, which a court calculates by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The fee yielded by the lodestar method is strongly presumed be a reasonable one. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). The reasonable hourly rate used in calculating the lodestar must be based on the market rate for an attorney's work. The determination of the market rate should be based upon that of lawyers with similar ability and experience in the community. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 519 (7th Cir.1993). Here, Plaintiffs' lodestar is reasonable.

### A. The Time Expended Prior to Plaintiffs' Acceptance of Defendants' Offer of Judgment Was Reasonable.

In ruling on a fee petition, the Court is expected to exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. An examination of Plaintiffs' counsels' billing sheets and the docket in this matter will reveal that the tasks performed were necessary to the results achieved and the amount of time spent on those tasks was reasonable, with most tasks being billed at the lowest increment possible: a tenth of an hour. Both the tasks completed by Plaintiffs' counsel, and the amount of time spent at each task, were reasonable and necessary to the prosecution of Plaintiffs' claims.

**B. Plaintiffs' Counsels' Rates are Reasonable and Supported.**

The purpose and intent of §1988 is to attract talented lawyers to prosecute civil rights violations. By promising to award the prevailing hourly rates, lawyers who could otherwise command high billing rates in commercial pursuits are encouraged to represent clients such as Plaintiff. *See Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993) ("In order for such a policy [vindicating civil rights through private action] to be effective, Congress felt it appropriate to shift the true full cost of enforcement to the guilty parties to eliminate any obstacle to enforcement."), citing S. Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5913) ("It is intended that the amount of fees awarded under [§1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases.").

It is axiomatic that the appropriate hourly rate for an award of fees is "'the rate that lawyers of similar ability and experience in their communities normally charge their paying clients for the type of work in question.'" *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000) (quoting *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999)). Further, an attorney's "actual billing rate for comparable work is presumptively appropriate for use as a market rate." *Jeffboat, LLC v. Director, Off. of Workers' Comp. Progs.*, 553 F.3d 487, 490 (7th Cir. 2009). For attorneys who derive a substantial proportion of their income from contingency fees, the court considers rates charged by other attorneys of similar skill, experience, and credentials as well as other courts' awards of fees. *Pickett v. Sheridan Health Care Center*, 07 C 1722, 2011 WL 1219294, at *4 (N.D. Ill. March 27, 2011) (citing *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 909–10 (7th Cir. 2007); *People Who Care v. Rockford Bd. Of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1311–13 (7th Cir. 1996)). In addition, a "previous attorneys' fee award is useful for establishing a reasonable market rate for similar work whether it is disputed or not." *See Jeffboat,* 553 F.3d at 491.

More than eight years ago now, in the case of *Entertainment Software Ass'n v. Blagojevich*, 05 C 4265, 2006 WL 3694851 (N.D. Ill. Aug. 9, 2006), another court in this district approved hourly rates at the following levels for Plaintiffs' counsel:

>1979 law graduate (27 years of practice): $585/hour
>
>1996 law graduate (10 years of practice): $425/hour
>
>2000 law graduate (6 years of practice): $340/hour

*Entertainment Software*, 2006 WL 3694851, at *2-3. In addition to the guidance provided in *Entertainment Software*, this Court can rely on the "Laffey Matrix." The United States Attorney's Office for the District of Columbia created the Laffey Matrix to provide an official guideline for "reasonable" rates in fee-shifting cases. *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 347 n.3 (6th Cir. 2000) (describing the Laffey Matrix as "an official statement of market-supported reasonable attorney fee rates."). According to the United States Attorney, "[t]he matrix is intended to be used in cases in which a 'fee-shifting' statute permits the prevailing party to recover 'reasonable' attorney's fees.'" This matrix provides the following guidelines:

| Experience | 2008-2009 | 2009-2010 | 2010-2011 | 2011-2012 |
| --- | --- | --- | --- | --- |
| 20+ years | 465/hour | 465/hour | 475/hour | 495/hour |
| 11-19 years | 410/hour | 410/hour | 420/hour | 435/hour |
| Law Clerks | 130/hour | 130/hour | 135/hour | 140/hour |

The Laffey Matrix "is a concession by [the United States Attorney] of what it will deem reasonable when a fee-shifting statute applies and its opponent prevails and seeks attorney fees." *Adolph Coors Co. v. Truck Ins. Exch.*, 383 F. Supp. 2d 93, 98 (D.D.C. 2005). *See also Chanel, Inc. v. Doan*, C-0503464 VRW, 2007 WL 781976, *6 (N.D. Cal. March 13, 2007) (explaining the court's practice of relying on the Laffey Matrix as reliable official data to determine appropriate hourly rates); *Kormer v. Astrue*, 08–5181, 2009 WL 3152039, at *2 n.5 (D. Minn. Sept. 24, 2009); *White v. McKinley*, 05–0203–CV–W–

NKL, 2009 WL 813372, at *7 (W.D. Mo. March 26, 2009).[2] Some district courts in this Circuit have favorably considered the Laffey Matrix. *See, e.g., Berg v. Culhane*, 9 C 5803, 2011 WL 589631, at *3 (N.D. Ill. Feb. 10, 2011); *Hadnott v. City of Chicago*, 07 C 6754, 2010 WL 1499473, at *6 (N.D. Ill. April 12, 2010) (citing *In re Trans Union Corp. Privacy Litig.*, 00 C 4729, 2009 WL 4799954, at *19 (N.D. Ill. Dec. 9, 2009)); *Catalan v. RBC Mortgage Co.*, 05 C 6920, 2009 WL 2986122, at *6 (N.D. Ill. Sept. 16, 2009); *Decker v. Transworld Sys., Inc.*, 09 C 50073, 2009 WL 2916819, at *5 (N.D. Ill. Sept. 1, 2009); *Robinson v. City of Harvey*, 99 C 3696, 2008 WL 4534158, at *7 (N.D. Ill. Oct. 7, 2008); *Lopez v. City of Chicago*, 01 C 1823, 2007 WL 4162805, at *8 (N.D. Ill. Nov. 20, 2007); *Delgado v. Village of Rosemont*, 03 C 7050, 2006 WL 3147695, at *5 (N.D. Ill. Oct. 31, 2006); *Sadler v. Barnhart*, 02 C 6891, 2004 WL 419908, at *2-3 (N.D. Ill. Feb. 25, 2004); *see also Arch v. Glendale Nissan*, 03 C 7297, 2005 WL 1421140, at *1 (N.D. Ill. June 7, 2005); *Covington-McIntosh v. Mount Glenwood Mem. Gardens S., Inc.*, 00 C 0186, 2004 WL 2700482, at *4 (N.D. Ill. Feb. 12, 2004); *Embry v. Barnhart*, 02 C 3821, 2003 WL 22478769, at *2 (N.D. Ill. Oct. 31, 2003).

In this case, Plaintiffs claim a lodestar of $15,093.50 for attorneys' fees, calculated as follows:

| **Name** | **Experience** | **Rate** | **Number of Hours** | **Total** |
|---|---|---|---|---|
| Torreya L. Hamilton | 19th year | $435 | 20.1 | $8,743.50 |
| Elizabeth R. Uribe | 4th year | $250 | 22.9 | $5,725.00 |
| Paralegal | - | $125 | 5 | $625.00 |

---

[2] Courts outside of Washington D.C. typically adjust the Laffey Matrix for what is called the "locality pay differential." See *Chanel, Inc.*, 2007 WL 781976, at *6-*7 (adopting the Laffey Matrix rate, but adjusting it upward by 5% due to the locality pay differential between California and D.C.); *In re HPL Technologies, Inc. Securities Litig.*, 366 F. Supp. 2d 912, 921 (N.D. Cal. 2005) (adjusting the Laffey Matrix upward by 9% for the pay differential for San Francisco). The locality pay differential in Chicago is 19.70% versus 15.98% for the D.C. area, meriting a 4% increase over the Laffey figures. See data located on the United States' Office of Personnel Management webpage at http://www.opm.gov/oca/05tables/ indexGS.asp.; *Schultz v. City of Burbank,* No. 06 C 5646, 2007 WL 1099479, at *2 (N.D. Ill. Apr. 10, 2007) (adding 4% to the figure provided by the Laffey Matrix); *Berg v. Culhane*, 09 C 5803, 2011 WL 589631, at *3 (N.D. Ill., Feb. 10, 2011) (citing adjustments upward with approval).

|  |  |  | TOTAL FEES | $15,093.50 |
|--|--|--|--|--|

1. *Attorney Torreya L. Hamilton's Hourly Rate is Reasonable.*

Ms. Hamilton was the lead attorney in this case, responsible for over-seeing every aspect of the litigation on the Plaintiffs' side. Attorney Hamilton seeks $435 per hour for her work on this case, which is commensurate with her skill and experience. Ms. Hamilton is in her 19th year practicing law and has spent much of that time in courtrooms trying cases. She spent eight years as a prosecutor for the largest unified criminal court system in the country (Cook County), where she tried hundreds of criminal cases ranging from misdemeanor cases to murder. Following that experience, she spent three years defending Chicago police officers in civil rights cases for the City of Chicago's Corporation Counsel's office. While at the City, Ms. Hamilton was responsible for defending a heavy caseload, which included several multi-million dollar exposure cases. Ms. Hamilton was promoted to Senior Counsel at the City of Chicago's Corporation Counsel's Office and then became responsible for supervising and training other City attorneys. During her time with the City of Chicago, Attorney Hamilton devised and implemented multiple training programs, including a week-long trial advocacy program in which she was responsible for the trial skills training of approximately sixty new attorneys. Since leaving the City of Chicago in 2006, Ms. Hamilton has built her own law practice, which concentrates on plaintiffs' civil rights work. On account of her significant trial experience, Ms. Hamilton is asked by other civil rights attorneys to assist them in trying cases, which she has done several times in the past few years.

The hourly rate requested by Ms. Hamilton of $435 is only slightly higher than her previously established hourly rate which has been both agreed to by the City of Chicago and recognized by other judges in this District: *Lebron v. City of Chicago*, 12CV752, (In January of 2014, Magistrate Judge Kim recognized Ms. Hamilton's $425 hourly rate and discussed Ms. Hamilton's

experience and credentials in a published memorandum opinion, in which he twice referred to her §1983 civil rights' experience as "extensive."); *Morado v. City of Chicago*, 12CV752 (in 2014, the City of Chicago suggested a rate of $425 an hour for Attorney Hamilton in their LR 54.3 joint statement to Judge Durkin which is attached as Exhibit D); *Richardson v. City of Chicago, et. al.*, 08CV4824 (in 2013, in ruling upon a contested fee petition, Judge Kendall awarded Attorney Hamilton $425 an hour, and the City of Chicago did not object to this rate); *Wiley v. City of Chicago*, 09 CV 37397(in 2010, the City failed to object to Ms. Hamilton's requested hourly rate of $425). In addition, even as early as 2011, Ms. Hamilton's hourly rate was set by judicial order: *Morjal v. City of Chicago, et. al.* 12CV185 (in 2013, in ruling upon a contested fee petition after the acceptance of a Rule 68 Offer of Judgment, Judge Lefkow awarded Attorney Hamilton an hourly rate of $400); *Nelson v. Salgado,* 09CV5357(in 2012, in ruling upon a contested fee petition, Judge Bucklo awarded Attorney Hamilton an hourly rate of $395); *Gibson v. City of Chicago, et al.,* 10 C 5310 (in 2011, in ruling upon a contested fee petition, Judge Castillo awarded Attorney Hamilton $395 an hour in 2011, and specifically praised her billing practices in his written fee opinion as an example that other Plaintiff's counsel should use as a model). Attorney Hamilton completed 20.1 hours of work on this case through the acceptance of Defendants' offer of judgment, and has submitted billing sheets for this work totaling $8,743.50 in attorneys' fees. *See Hamilton Declarations and Billing Sheets*, attached as Exhibit A.

2. *Attorney Elizabeth R. Uribe's Hourly Rate is Reasonable.*

Elizabeth R. Uribe is requesting $250 per hour for her work on this matter. Attorney Uribe is in her fourth year of practice where she has focused almost exclusively on civil rights litigation. Ms. Uribe graduated from the University of Wisconsin-Madison with comprehensive honors and distinction in 2005 and from Georgia State University College of Law *cum laude* with *pro bono* recognition and highest distinction in 2010. At Georgia State, she received honors in constitutional law, and participated in student groups dedicated to volunteering and mentoring undergraduate

students. Ms. Uribe manages the externship program for the Hamilton Law Office, LLC, which includes training, supervising, and mentoring multiple law students each semester.

To date, Ms. Uribe has represented plaintiffs in sixty-six civil rights cases. On May 29, 2013, the Honorable Judge Joan Humphrey Lefkow awarded her an hourly rate of $185 per hour, without objection from the City of Chicago, for work performed during the early part of 2012 in the case of *Morjal v. City of Chicago, et al.,* 12 CV 185. Most recently, on November 20, 2013, the City of Chicago agreed to pay an hourly rate of $250 for Ms. Uribe's work performed in the case of *Volland v. City of Chicago, et al.,* 13 CV 1477, a civil rights case currently pending before the Honorable Judge Milton I. Shadur. Ms. Uribe's requested rate is consistent with attorneys of like experience in this District. *See Fox v. Barnes*, 09 CV 5453 (awarding attorney with four years experience a rate of $275 per hour); *Thomas v. Cook County Sheriff's Dept.*, 04 CV 3563 (awarding attorney with less than three years experience a rate of $225 per hour). Attorney Uribe completed 22.9 hours of work in this case and has submitted billing sheets totaling $5,725.00 in attorneys' fees. *See Declarations and Billings Sheets of Attorney Uribe,* attached as Exhibit B.

*3. Plaintiffs' Paralegal Rate is Reasonable.*

Plaintiffs are also entitled to reasonable fees for their paralegals work under Section 1988. Plaintiffs submit that the hourly rate of $125 for their paralegals is reasonable; the Laffey Matrix allows for up to $140 an hour for similar work. Plaintiffs have submitted 5 hours of paralegal work on this case prior to the acceptance of the offer of judgment, totaling $625.00 in paralegal fees. *See Paralegal Billing Sheets,* attached as Exhibit C.

## CONCLUSION

Plaintiffs are the prevailing party in this matter. Thus, they are entitled to the reasonable attorneys' fees and non-taxable costs requested by their counsel for the necessary work performed in pursuit of the result they achieved.

**WHEREFORE**, Plaintiffs respectfully request that this Court grant their counsel fees and costs pursuant to 42 U.S.C. §1988 in a total amount of $15,093.50.

>Respectfully Submitted,
>
>/s Torreya L. Hamilton
>One of Plaintiffs' Attorneys

HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, IL 60604
312.726.3173
tlh@thehamiltonlawoffice.com
Attorney No. 6229397